22 C. C. P. A. (Patents)

### JOHN WOOD MFG. CO. v. SERVEL, Inc.

#### Patent Appeal No. 3422.

Court of Customs and Patent Appeals.

June 12, 1935.

Arthur E. Paige and Frank E. Paige, both of Philadelphia, Pa., for appellant.

A. Yates Dowell, of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in a trade-mark opposition proceeding from the decision of the Commissioner of Patents reversing the decision of the Examiner of Interferences dismissing the notice of opposition of appellee and holding that appellant was entitled to the registration of the trade-mark "Hostess," for use on refrigerators and parts thereof.

In its petition for registration, appellant alleged that it had used its trade-mark on its goods since April 19, 1932.

In its notice of opposition, appellee stated, among other things, that:

"1. Long prior to April 27, 1932, the opposer adopted and has used continuously (since 1928) the word Hostess in its literature and advertising matter to designate a particular model of refrigerator manufactured by the opposer and sold in commerce between the several States of the United States, and in foreign commerce, and has popularized its goods under said designation by scrupulous care continuously expended in manufacture and sale and by large expenditures in teaching the public the excellence and dependability of goods so designated.

"2. The description of goods given by the applicant as bearing the trade-mark Hostess is Electric Refrigerators and parts thereof which is identical with opposer's goods and, therefore, if applicant is allowed to register the mark sought, confusion in the mind of the public will undoubtedly occur and injury and damage will be caused to opposer's good will and established reputation. Two advertising folders, showing the mark as used by the opposer, are attached hereto.

"3. The opposer receives orders for its goods under the designation Hostess which the applicant seeks to register as a trademark and this designation is analogous to trade-mark use as set forth by a line of decisions both of the Courts and Commissioner of Patents. Note, for example, Lang v. Green River Distilling Company 148 O. G. 280, in which case the United States Court of Appeals of the District of Columbia held that in opposition proceedings where it appears that the opposer adopted the mark prior to the date of adoption by applicant the question of the registerability of opposer's mark was immaterial and the sole question to be considered was one of similarity. The present case is identical as the mark opposed was adopted by the opposer several years prior to the adoption of the mark by applicant. * * *"

—and that it believed it would be damaged by the registration of the trade-mark to appellant.

Thereafter, appellant filed a motion to dismiss the opposition on the ground that it did not allege a trade-mark use of the

word "Hostess" by appellee, but, on the contrary, alleged that appellee had used the word in its literature and advertising to designate a particular model of refrigerator manufactured by it; that opposer's trade-mark for use on refrigerators was the word "Electrolux"; that, therefore, the allegations contained in the notice of opposition were not sufficient, under section 6 of the Trade-Mark Act of February 20, 1905, as amended by Act March 2, 1907, 34 Stat. 1252 (15 USCA § 86), to show likelihood of damage to appellee by the registration of the mark to appellant; and that the notice of opposition should, therefore, be dismissed.

Thereupon, the Examiner of Interferences, in a decision dated November 15, 1932, stated that, from an examination of the notice of opposition, it was apparently the intention of opposer, appellee, to allege that the word "Hostess," as used by it, performed the dual function of designating not only a particular type or model of refrigerator manufactured by it, but also indicated the origin of such model with appellee, and, accordingly, denied appellant's motion to dismiss. However, in his decision, he called attention to the fact that, if it so desired, appellant might waive its right to file an answer, and request that the cause be set for final hearing on its motion to dismiss.

Thereafter, such waiver was filed by appellant, and the cause came on for final hearing before the Examiner of Interferences.

In his final decision, the Examiner stated that appellant's waiver of its right to file an answer amounted to a concession that all facts properly alleged in the notice of opposition were admitted to be true. He then said:

"The opposer alleges prior use also on refrigerators of the same notation 'Hostess,' not however as a trade-mark which is affixed to the goods, but only 'in its literature and advertising matter to designate a particular model of refrigerator' which opposer manufactures and sells; and it is further alleged that 'opposer receives orders for its goods under the designation Hostess,' and this opposer claims, is analogous to trade-mark use. The opposer has filed a pamphlet with its notice of opposition which shows the manner in which this notation is used in its literature and advertising matter. An inspection of this pamphlet discloses that the trade-mark which opposer affixes to all refrigerators which it manufactures and sells is the notation 'Electrolux.' These refrigerators of the opposer, it appears from this pamphlet, are made in different sizes and styles to suit the needs or fancy of purchasers. To facilitate identification of these different sizes or styles of refrigerators opposer designates the same in its literature, as appears from this pamphlet by convenient names and model designations, as for example, The Kitchenette, Model El-4; The Double Duty, Model El-5; The Hostess, Model El-5B; The Chef, Model El-7, etc.

"It is quite evident from the foregoing that Electrolux is the trade-mark which opposer affixes to its refrigerators, and which is used to indicate origin thereof, and the names or model designations such as Hostess serve merely to indicate the type or size of the refrigerator. Naturally, therefore, purchasers in sending orders to opposer must of necessity specify either by name, or by model designation, the particular size or type refrigerator that they desire. Otherwise the order would be incomplete and could not be understood. Since opposer uses the same trade-mark Electrolux on all its refrigerators the size or model designation Hostess appearing on an order possesses only the same significance as the model designation itself, for example, Model El-5B, and serves no better as a means for indicating the origin of the refrigerators. * * * "

—and held that, as the word "Hostess" was used by appellee merely to indicate a grade or model, and not to indicate origin of its goods, it was not entitled to oppose the registration of appellant's mark, and, accordingly, dismissed the notice of opposition.

On appeal, the Commissioner of Patents, after stating the facts hereinbefore set forth, held that, although appellee had not alleged trade-mark use of the word "Hostess," it had used the word as a "grade or model mark" in advertising one of its models of refrigerators, and received orders designating such model "by this style or grade mark"; and that, therefore, the question in issue was whether, under the related circumstances, appellee would be damaged by the registration of the mark to appellant.

The commissioner discussed various authorities on the subject, and reached the conclusion that appellee's notice of opposition was sufficient under the statute, and

that, on the record as presented, appellant was not entitled to register its mark, and, accordingly, reversed the decision of the Examiner of Interferences.

Although appellee has not used the word "Hostess" on its goods, and, therefore, has not used it in a strictly trade-mark sense, it alleged in its notice of opposition that it had used the word in its advertisements, and had received orders in which it was used to indicate a particular model or type of refrigerator manufactured by it, which "model" had become popularized and known to the public as "Hostess," and was sold under that designation; and that, should appellant be permitted to register the word as a technical trade-mark for its refrigerators, appellee would be damaged.

Much of the discussion by counsel for the parties in this case was occasioned by the statement contained in the decision of the Commissioner of Patents, to the effect that the holding of the Court of Appeals of the District of Columbia in the case of Touraine Co. v. F. B. Washburn & Co., 52 App. D. C. 356, 286 F. 1020, 1022, appeared to be contrary to the conclusion reached by him. The commissioner was of opinion, however, that the decision in that case was influenced by certain facts, which, he alleged, were there presented, and which created an estoppel against the opposer.

In view of its importance, we deem it appropriate to quote a considerable portion of the decision in the Touraine Co. Case, supra:

"Considering all these facts, we are satisfied that the opposer never used, or thought of using, the word as a trade-mark until Miner appeared upon the field, and that was many years after the applicant had adopted and applied it to its entire output. It was used by the opposer to indicate the character of the chocolate, not the origin of it. The distinction between a technical trade-mark and a device to denote style or quality is pointed out in Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 546, 11 S. Ct. 396, 34 L. Ed. 997; and Columbia Mill Co. v. Alcorn, 150 U. S. 460, 14 S. Ct. 151, 37 L. Ed. 1144. The mere use of a word as a trade-mark does not prove likelihood of damage to one who uses the mark in another capacity, for instance, as a grade indicator. Since opposer has no other proof of probable damage its opposition should have been dismissed.

"The Patent Office in upholding the opposition appeared to rely on our decision in Atlas Underwear Co. v. B. V. D. Co., 48 App. D. C. 425, but we do not think it supports the conclusion reached. Of course, a trade-mark use of a mark is not necessary in a proceeding of this kind. If the opposer can show in any way that he would probably be damaged by its registration to the applicant he may do so. The trademark statute (section 6, 33 Stat. 726 [Comp. St. § 9491, 15 USCA § 86]) is our chart. There is nothing in it which says that a person must own a trade-mark, registered or not, before he can oppose the registration of the mark to another person. All that the statute requires of him, according to our interpretation, is to prove facts which, if true, would tend to show that he would probably be damaged by the registration. Skene v. Marinello Co., 50 App. D. C. 265, 270 F. 701; McIlhenny Co. v. Trappey, 51 App. D. C. 216, 277 F. 615.

"Opposer relies on Nairn Linoleum Co. v. Ringwalt Linoleum Works, 46 App. D. C. 64, but there is nothing in it which conflicts with the views we have here expressed. It declares that it is permissible for one who has used a word as a tradename to make opposition to its registration as a trade-mark. Undoubtedly this is correct. But it does not follow that the mere fact that he has used it as a tradename establishes that he would be damaged by the registration of the same name as a trade-mark. He may continue to use the word as a trade-name, notwithstanding its registration to another as a trade-mark.

"The opposer in this case having failed to prove that it would probably be damaged by the registration of the mark, we must reverse the decision of the Commissioner; and it is so ordered."

It is true that, in that decision, the court reached the conclusion that the opposer was not entitled to prevail. However, its decision was based entirely upon the proposition that the opposer had not established that it would be damaged by the registration of the mark there involved. It was clearly pointed out by the court that evidence of the use of a word as a grademark, standing alone, was not sufficient to establish that the user thereof would be damaged by the registration of it by another, but that if the opposer could "show in any way" that such registration would be likely to result in damage to him, he would

be entitled to prevail in an opposition proceeding.

In the case of Atlas Underwear Co. v. B. V. D. Co., 48 App. D. C. 425, the court said: "We do not think the opposer is required to show a superior right in order that it may successfully resist the application. If it is on an equal footing with the applicant, and can show probable damage, that will be enough. This court has declared more than once that a trademark use of a mark by an opposer is not necessary in a proceeding such as the one before us. Natural Food Co. v. Williams, 30 App. D. C. 348, 350; H. W. Johns-Manville Co. v. American Steam Packing Co., 33 App. D. C. 224, 226; Electro Steel Co. v. Lindenberg Steel Co., 43 App. D. C. 270, 273. The record discloses that the opposer was using the mark under consideration in connection with its business prior to the applicant's coming into the field. It thereby acquired a right to its use, although not necessarily an exclusive one. If registration is granted to the applicant's mark, that right would be sequestered and the applicant given a monopoly of the mark. This would likely result in damage to the opposer; hence, the latter has a right to resist the registration."

It appears from the decision in that case that the opposer was not using the mark in a strictly trade-mark sense. However, its use was analogous thereto. That is to say, opposer's use of the mark was such that, although not entitled to its exclusive use, it was entitled to prevent the applicant from securing, by registration, the statutory prima facie right of exclusive use. There is nothing in the decision to indicate that the court considered the trademark descriptive of the goods on which it was used. Having established the likelihood of damage by the registration of the mark to applicant, the opposer, although it had not used the mark as a trade-mark,

was held to be entitled to relief in an opposition proceeding. See, also, W. W. Stewart & Sons v. Raphael N. Paris, 15 Trade Mark Rep. 424; Nims on Unfair Competition and Trade-Marks (3d Ed.) pp. 41, 644, 645, and 660; Lawrence Manufacturing Company v. Tennessee Manufacturing Company, 138 U. S. 537–549, 11 S. Ct. 396, 34 L. Ed. 997.

There are expressions in some decisions of the courts, although the precise issue before us was not there presented, which might indicate that, with the exception of marks descriptive in character, an opposer must establish a trade-mark use. However, we think the authorities cited, supported as they are by reason and common sense, sustain the proposition that if an opposer allege and establish priority of use analogous to a trade-mark use of a "grade-mark" or "trade-name," and the likelihood of damage to him by the registration of such mark to another, he is entitled to relief under the provisions of the statute.

If we are wrong about that, then an applicant for registration can appropriate the opposer's grade-mark or trade-name, no matter how valuable it may be.

It clearly appears from appellee's notice of opposition that, although the word "Hostess" was not used by it as a trademark, its use was analogous thereto, in that one of its models of refrigerators had become popularized and identified in the mind of the public as the product of appellee; that it is entitled to use it in connection with the marketing of its goods; that appellant is not entitled to its exclusive use; and that, therefore, appellee would be damaged by the registration of the mark to appellant.

We are in accord with the conclusion reached by the Commissioner of Patents, and his decision is affirmed.

Affirmed.