# QUAKER CITY FLOUR MILLS COMPANY *v.* QUAKER OATS COMPANY.

---

TRADEMARKS; GEOGRAPHICAL WORDS; EXCLUSIVE USE.

1. Where in a trademark interference it appears that registrations of a given word as applied to certain products have extended back for twenty years, and there is no evidence of abandonment of the marks, they must be presumed to be still in use.

2. The word "Quaker City" is not registerable as a trademark, because it is of such geographical signification as to bring it within the prohibition of sec. 5 of the trademark act of Congress of 1905.

3. While the use of a trademark in connection with accessory symbols or words still constitutes a use of the mark, whatever right an applicant for registration has acquired to the exclusive use of his mark must appear clearly from the use shown.

4. The trademark law does not create a trademark right, but merely provides for the registration of marks, the right to which has accrued from actual use.

5. The right to register the word "Quaker," as applied to flour, cannot be predicated upon previous use of the words "Quaker City" as applied

to that product. (Following *Re Motz Tire & Rubber Co.* 40 App. D. C. 487, and distinguishing *Re Standard Underground Cable Co.* 27 App. D. C. 320.)

No. 945.   Patent Appeals.   Submitted January 13, 1915.   Decided March 1, 1915.

HEARING on an appeal from a decision of the Commissioner of Patents refusing to register a mark as a trademark for flour. *Affirmed.*

The facts are stated in the opinion.

*Mr. James L. Steuart* for the appellant.

*Mr. Frank F. Reed, Mr. Edward S. Rogers,* and *Mr. Francis M. Phelps* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Appellant, Quaker City Flour Mills Company, appeals from a decision of the Commissioner of Patents in an interference proceeding wherein its application for registration of the word "Quaker" as a trademark for flour was refused.

Registrations of the word "Quaker" for flour and flour products extend back to 1895. As no evidence of abandonment of these marks appears, they must be presumed to be still in use. The tribunals of the Patent Office did not consider it necessary to pass upon the question of priority, concerning which a large volume of testimony was taken, for the reason that it does not appear that appellant company or its predecessors ever used the word "Quaker" as a trademark for flour.

The evidence shows that the mark used by appellant's predecessor in business down to 1902, when it began to use the mark, was "Quaker City Mills" and "Quaker City," but never "Quaker" alone. We do not find that the word "Quaker" has ever been used by appellant. Appellant must therefore stand

or fall upon its right to register "Quaker," though only a part of the mark actually used.

Manifestly "Quaker City" could not be registered, for it is of such a geographical signification as to bring it within the prohibition of sec. 5 of the trademark act of 1905. It is settled that the use of a trademark in connection with accessory symbols or words still constitutes a use of the mark. *Walter Baker & Co.* v. *Delapenha,* 160 Fed. 746, 750; *Bass, Ratcliff & Gretton* v. *Feigenspan,* 96 Fed. 206, 212; *Walter Baker & Co.* v. *Puritan Pure Food Co.* 139 Fed. 680, 682. On the other hand, it is equally well settled that whatever right an applicant for registration has acquired to the exclusive use of his mark must appear clearly from the use shown. The trademark law does not create a trademark right, but merely provides for the registration of marks, the right to which has accrued from actual use. It therefore appears that appellant is here asking the law to create in it a trademark right to the word "Quaker," when it has never used such mark.

The distinction here involved is sharply pointed out by Mr. Justice Robb in the case of *Re Motz Tire & Rubber Co.* 40 App. D. C. 487, as follows: "That the mark which the record discloses the appellant adopted and used is descriptive, and hence nonregisterable, is too plain to admit of argument. Realizing this, the applicant now seeks to register a mark which the record fails to show it has ever used. The Patent Office was therefore quite right in declining to register this fictitious mark, this mere skeleton of the real mark." Here it is sought to convert "Quaker City," an unregisterable mark, into a registerable mark by dropping the word "City." As the Commissioner in his opinion pertinently observed: "The word 'Quaker' and the word 'Quaker City' have different meanings. Use of 'Quaker City' on goods does not establish trademark use of the word 'Quaker,' any more than it establishes trademark use of the word 'City.'"

Reliance is placed by counsel for appellant on the holding of this court in *Re Standard Underground Cable Co.* 27 App. D.

C. 320. But in that case the applicant presented two arbitrary features, and it was held that he had the right to select the portion which he believed to be his trademark. There the word "Eclipse" was printed on a dark background, representing a partial solar eclipse, and underneath this dark background were the words "Black Core." The drawing furnished in the application showed only the word "Eclipse." Holding this mark registerable, the court said: "It is within common knowledge that a trademark is ordinarily used upon a label which contains embellishments, ornamentations, and other matter which, standing by themselves, may often be proper subject-matter for exclusive appropriation as trademarks; yet such matter is no essential part of the trademark claimed, and by which the brand in connection with which they are used becomes known. This is specially so when the trademark is a fancy name or coined word." Referring to the power of the Commissioner, the court said: "The Commissioner is vested with power to determine, in the first instance, whether the mark as described, shown, and claimed is subject to appropriation by the applicant, and may satisfy himself as to whether the trademark has been actually used in interstate or foreign commerce. When he finds that the mark as claimed has so been used, it is not for him to turn to the specimen, if one be required by him, and, seeing other matter than the mark claimed, shown on the specimen, require applicant to add any such matter." But the difficulty here is that "the mark as claimed" has not been used. It is only part of the mark which actually designated the product to which it was applied. If appellant, for example, had shown a design with the word "Quaker" surrounded by a scroll, and underneath the picture of a man in Quaker dress, undoubtedly it would have the right to declare in the Patent Office which design it claimed as its trademark; and that, we think, illustrates the distinction between this and the *Underground Cable Co. Case.*

We think that the law requires that the mark applied for must be the same as the mark shown to have been used. To hold otherwise would permit appellant, in this instance, to convert

: 264    HEATON-PENINSULAR B. F. CO. *v.* INDEPENDENT B. F. CO.

Statement of the Case.                    [43 App.

a mark which the statute prohibits from being registered, because of its geographical signification, into a technical trademark by eliminating the word which makes it geographical, while the geographical term is the one which has actually been used. The law will not permit that which it expressly prohibits to be legally accomplished by indirect methods.

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings as by law required.                    *Affirmed.*