**FAMILY CIRCLE, INC., Plaintiff,**

v.

**FAMILY CIRCLE ASSOCIATES, INC.,**
**et al., Defendants.**

**Civ. No. 985–61.**

United States District Court
D. New Jersey.

June 7, 1962.

Gordon A. Philips, Trenton, N. J., for plaintiff; A. Yates Dowell, Washington, D. C. and William R. Carter, New York City, of counsel.

Norman N. Popper, Newark, N. J., for defendants.

LANE, District Judge.

Plaintiff, charging defendants with infringement of its trade-mark, "Family Circle," seeks to enjoin defendants from the use thereof. Defendants counterclaim, demanding cancellation of plaintiff's registration, No. 617,878, which covers the trade-mark, "Family Circle." The nub of defendants' contention is that when plaintiff submitted the affidavit showing the words "Everywoman's Family Circle," it falsely purported to

demonstrate use of the mark, "Family Circle." To quote allegation 9 of defendants' counterclaim: "The affidavit was false, untrue, and misleading and * * * was relied upon by the Commissioner of Patents."

Plaintiff has moved under F.R.Civ. P. 12(b), 28 U.S.C.A., for dismissal of defendants' counterclaim on the ground it fails to state a claim upon which relief can be granted. Since the parties had gone beyond the scope of the pleadings in their arguments by referring to affidavits and questions of fact, the court decided to conduct a separate hearing on the counterclaim. Disposition of the counterclaim may prove an important factor in rendering an adjudication of the complaint.

It is established that on October 29, 1940, the assignor of plaintiff registered the trade-mark, "Everywoman's" (Registration No. 382,401) for a monthly magazine; on December 20, 1955, a predecessor in title to plaintiff registered the trade-mark "Family Circle" (Registration No. 617,878) for a monthly magazine; on or about April 16, 1958, plaintiff acquired title to the "Family Circle" trade-mark by a merger between "Everywoman's" magazine and "Family Circle" magazine; in May of 1958, "Family Circle" magazine ceased to be published and the first edition of "Everywoman's Family Circle" was published in June of 1958; on April 7, 1959, the trademark "Everywoman's Family Circle" (Registration No. 676,725) was issued to plaintiff.

On December 27, 1960, plaintiff timely filed an affidavit pursuant to 15 U.S. C.A. § 1058(a) and 15 U.S.C.A. § 1065, asserting that it was using the trademark "Family Circle." The germane parts of the statute proclaim:

(1) A registrant during the sixth year after registration shall file an affidavit attesting to continued use or excusing non-use; otherwise, the registration shall be canceled by the Commission of Patents.

(2) A registrant may acquire incontestable rights in a registered mark if, in the sixth year after registration, he files an affidavit that the mark has been continuously used for the preceding five consecutive years and is still in use.

The principal trade-mark utilizes the designation "Family Circle." The registered affidavit, containing a specimen of a trade-mark reading "Everywoman's Family Circle," states that the trademark "Family Circle" is in use as evidenced by such specimen. It must be noted that the words "Family Circle" appear prominently on the affidavit and on attached sample editions of plaintiff's magazine; the word "Everywoman's" appears in much smaller type within the upper crossbar of the "F" initial letter of "Family." The Commissioner of Patents accepted the affidavit on the conclusion, we must presume, that the specimen properly supported continued use of the registration mark, "Family Circle."

It is plaintiff's position that this court lacks the requisite jurisdiction to consider cancellation of trade-mark registration No. 617,878. In support thereof it cites 15 U.S.C.A. § 1064(a):

"Any person who believes that he is or will be damaged by the registration of a mark on the principal register established by this * * * Act * * * may * * * apply to cancel said registration—(a) within 5 years from the date of registration of the mark under this Act; * * *."

But, 15 U.S.C.A. § 1119 empowers this court to "* * * order the cancelation of registrations, in whole or in part * * * and otherwise rectify the register with respect to the registrations of any party to the action." In addition, 15 U.S.C.A. § 1064(c) indicates:

"Any person who believes that he is or will be damaged by the registration of a mark on the principal register established by this * * * Act * * * may * * * apply to cancel said registration—* * * (c) at any time if * * * its registration was obtained fraudulently * * *."

In Daphne Robert's Commentary on The Lanham Trade-Mark Act, it is stated that The Lanham Trade-Mark Act has greatly expanded the jurisdiction of the federal courts in their ability to entertain litigation in the field of trademarks. See 15 U.S.C.A. § 1051, at pp. 265, 280–281. The article evinces the opinion:

"With regard to trade-marks, service marks and collective marks on the principal register, a petition to cancel will not be entertained more than five years after issuance of the registration unless one of the following grounds appears on the face of the petition:

"1. The registration is defective because it consists of or comprises prohibited matter;

"2. *The registration was obtained through fraud;*

"3. *Use of the registered mark has been discontinued (non-use of a mark for two consecutive years may be accepted as prima facie evidence of abandonment of the mark);*

"4. The registered mark is being used by an assignee to misrepresent source; or

"5. The registered mark, because of a registrant's affirmative improper uses of his own or failure to take action to stop improper uses by others, has lost its significance as an indication of origin—another way of saying the mark has lost its distinctiveness as a result of acts of omission or commission of the registrant." [Emphasis added.]

█ Defendants' counterclaim rests in part on the theory that the use of the registered mark was abandoned. In addition, defendants have pleaded that plaintiff employed a fraudulent affidavit. It is our ruling that we have jurisdiction to determine the merits of the counterclaim.

The issue presented is whether an affidavit utilizing the specimen "Everywoman's Family Circle," wherein the word "Everywoman's" appears in smaller letters on top of the prominently displayed words "Family Circle," illustrates continued use of the registered trademark "Family Circle." We are not concerned with the requisites for an original application, but rather with the standards pertaining to an affidavit attesting to continued use.

An acknowledged expert in the field of trademarks, who formerly served as Assistant Commissioner of Patents of the United States in charge of trade-mark law, testified:

" * * * [that the requirements for affidavits] have never been so tight as they are on an original application. * * * Possibly the reason is—and this would be merely surmise on my part—that when, in this kind of situation where there has been a merger or where there has been a combining of marks after the original registrations have issued, there has through usage grown a consciousness in the purchasers' minds of these marks separately, and the desire is to give the registrants the benefit of the doubt, to preserve such goodwill as may attach to the marks separately, and perhaps to prevent others from coming along and using it by itself."

When the court asked the expert witness to give an opinion as to the truth or falsity of the affidavit in question under the circumstances here, she testified:

"THE WITNESS: Of course, the Patent Office has already held it to be a satisfactory affidavit, because they accepted it.

"THE COURT: Over and above that.

"THE WITNESS: And certainly it is not false to say that the mark is still in use, because the mark is still in use.

"THE COURT: Why do you say that?

"THE WITNESS: This is one of those situations, your Honor, where there has resulted a composite mark

as the result of the combination of two things, and this isn't unusual in business circles. As a matter of fact, it isn't unusual for a single trade-mark owner to form his own composite.

"THE COURT: Is it an embellishment, in effect * * *?

"THE WITNESS: For instance, let's take a mark, the American Gasoline mark. There is the ellipse with the torch in the center, then the word 'American' appears across the center of it, and it is the practice, and generally recognized as a perfectly proper practice by everyone I know, that the ellipse with the torch is one mark, the ellipse with the torch with the word 'American' is one mark, and the word 'American' by itself is one mark, and certainly in filing an affidavit you would show the composite, but it is a showing that each of these marks is in use, and this has been the practice for a long time. * * *

"A few years back the Morton Salt Company took the slogan, 'When it rains, it pours,' from the bottom of the box and put it around the umbrella, so that there was a combination of two of its marks. However, the registration of the single mark, the girl with the umbrella on the one hand and the slogan on the other hand, those two registrations still exist. And in filing an affidavit of continued use of each of those marks, they today would show the combined MARKS or the combination, the composite mark. That would be sufficient for the Patent Office to accept a showing of continued use of each of those marks.

"THE COURT: Of each of the embellishments individually?

"THE WITNESS: That is correct, and that is and, as I say, has been the practice since I have been in this field."

Thus, we see by the expert's testimony that it is a normal event for two marks to be combined into one composite mark.

Counterclaimant, in arguing that the affidavit containing "Everywoman's Family Circle" does not demonstrate use of the mark "Family Circle," has relied upon Application of Continental Distilling Corporation, 254 F.2d 139, 45 C.C. P.A. 863 (1958). There, the patent office refused to accept affidavits of use in connection with the registrations for the word "Yankee" and the word "Clipper" respectively, where the specimens submitted with the affidavits showed a sailing vessel, surrounded by a circular border bearing two stars and the words, "Yankee Clipper Blended Whisky." The affidavits were refused on the grounds the specimens did not show trade-mark use of either "Yankee" or "Clipper." The court stated:

"It is evident that the words 'Yankee' and 'Clipper' are not used separately as trademarks on the specimens, but convey the single unitary meaning of an American ship of the clipper type. The illustration of such a ship forms a prominent feature of the specimen and, as above noted, appellant has registered 'Yankee Clipper' as a unitary trademark.

" * * * So in the instant case, the words 'Yankee Clipper' as a unit may have been used as a trademark distinct from the words 'Blended Whisky' or the picture of a ship; but neither 'Yankee' nor 'Clipper' has been so used separately.

" * * * That is not the case here since neither 'Yankee' nor 'Clipper' is descriptive as applied to whisky and neither has more trademark significance than the other." Id. at 140.

The case at bar, however, presents circumstances different from the Continental Distilling Corporation decision. "Family Circle" possesses more significance than "Everywoman's." The dominant phrase, "Family Circle," is two words; "Everywoman's" is one. Moreover, "Family Circle" is in far larger print than "Everywoman's." The word "Everywoman's" appears at a minor

position in the upper crossbar of the "F" initial letter of "Family," in the title. As a result, one must conclude that it would be very difficult, if not impossible, to read "Everywoman's" beyond a distance of several feet. Yet the letters of "Family Circle" would easily be legible at a far greater distance. The primary words of the subject trade-mark are "Family Circle." The annexation of "Everywoman's"—in the manner it was attached—merely added a word secondary in significance and in physical appearance.

Plaintiff has brought to our attention an illuminating quote in 49 T.M.Rep. 911, 917, by Merchant, the Director of Trademark Examining Operations:

"In many instances, the manner in which a mark is used, particularly with respect to manner of display or background, differs from the form in which it was originally registered. In such cases specimens or facsimiles submitted with the affidavit of use therefor differ from the mark as registered. A liberal policy has been followed in accepting affidavits where the accompanying exhibits indicate that the essential features of the mark are still in use."

The uniting of the small lettered "Everywoman's" with "Family Circle" formed a more stylized expression. Nevertheless, it would be unreasonable to consider this such a departure as to create a brand new unitary meaning with different significance and connotation. That the essential features of the trademark "Family Circle" were still in use was demonstrated to the commissioner when plaintiff filed the affidavit setting forth the composite title, "Everywoman's Family Circle."

Accordingly, in the matter of defendant's counterclaim, judgment will be rendered in favor of the plaintiff and we shall deny defendant's request to cancel plaintiff's registration No. 617,878.

Submit an order in accordance herewith.